# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60083

United States Court of Appeals
Fifth Circuit

**FILED**
January 11, 2019

Lyle W. Cayce
Clerk

MEC, INCORPORATED, doing business as The Pony,

      Plaintiff - Appellant

v.

LOWNDES COUNTY BOARD OF SUPERVISORS; LOWNDES COUNTY CHANCERY CLERK; LOWNDES COUNTY; JOHN DOES 1-10,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:16-CV-151

Before  JONES, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

This case requires the court to determine whether *res judicata* bars the Plaintiff MEC Incorporated's case because of its similar suit pursued in state court.  The court concludes that because all of *res judicata*'s elements are met and MEC received a full and fair opportunity to litigate in state court, the district court properly held that *res judicata* applies.  Accordingly, this court **AFFIRMS**.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60083

## BACKGROUND

This case began as a dispute over a nightclub. MEC operates an adult entertainment club called The Pony in Lowndes County, Mississippi. In 2013, the county passed an ordinance restricting the business hours of such places. Under the ordinance, nightclubs may only operate from noon to 1:00 a.m. The ordinance requires all customers to leave nightclubs by 1:30 a.m. and the "owner, management, employees and band will only be allowed inside the building after 1:30 a.m. to remove equipment."

The ordinance provides that restaurants and/or bars may apply for an exemption to these restrictions if they meet certain conditions. MEC applied to the Lowndes County Night Club Regulations Committee for such an exemption. The Committee, however, denied the request. MEC appealed the Committee's decision to the Defendant Lowndes County Board of Supervisors. On December 7, 2015, the Board also denied the exemption.

MEC appealed the Board's decision to the Circuit Court of Lowndes County, Mississippi, on December 16, 2015.[1] In the Circuit Court, MEC argued that the Board's decision should be reversed because it "violated MEC's constitutional substantive due process rights, took away property rights of MEC in violation of the U.S. and Mississippi Constitution, [and] acted arbitrarily and capriciously in denying the exemption application without substantial evidence supporting their decision." MEC contended that, although the Board had afforded MEC procedural due process, it had denied

---

[1] Under Mississippi law, a party wishing to appeal a county board of supervisors' decision has to file an appeal in that county's Circuit Court within ten days of the decision. *See* Miss. Code Ann. § 11-51-75 (2012). Essentially, the Circuit Court, although generally a trial court, functions as an appellate court in these situations. *See id.* This statute was changed in the 2018 Mississippi legislative session, affecting how the appeal is commenced and the preparation of the record. *See* 2018 Miss. Laws Ch. 448 (effective July 1, 2018). References to the statute are to the version that existed at the time of the 2015 appeal.

2

No. 18-60083

MEC substantive due process.  Without directly saying so, MEC also appeared to contend that the Board's actions amounted to an unlawful taking.

The Circuit Court understood MEC's arguments as asserting that "it has been deprived of its due process rights because the ordinance takes from [MEC] a portion of [its] right to use [its] property and that the Board['s] decision to deny [the] request for an exemption was not supported by sufficient evidence and was, therefore, arbitrary and capricious."  The Circuit Court held that because no taking occurred, no due process violation occurred.  It also ruled that the Board's decision was supported by substantial evidence and was not arbitrary and capricious.  The Circuit Court did not separately address MEC's substantive due process claim.  It dismissed MEC's appeal with prejudice.

MEC then brought the present suit in federal district court, arguing that the ordinance amounted to an unlawful taking of MEC's property and that the Defendants violated MEC's substantive and procedural due process rights. The Defendants moved for summary judgment, asserting that both *res judicata* and collateral estoppel barred MEC's claims because they were previously litigated in the Mississippi Circuit Court.  The district court granted summary judgment on that basis.  MEC timely appealed.

## STANDARD OF REVIEW

"The res judicata effect of a prior judgment is a question of law that this court reviews de novo." *Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

## DISCUSSION

The primary issue on appeal is whether *res judicata* bars MEC's case. MEC makes two arguments to that end.  First, it contends that the elements of *res judicata* under Mississippi law have not been met.  Second, MEC argues that it was denied a full and fair opportunity to litigate in the state court, so

No. 18-60083

the state court's judgment should not have preclusive effect.[2]  The court will address each contention in turn.  In the alternative, MEC argues that we could also affirm on the basis of collateral estoppel.  That also will be discussed.

## I.    *Res Judicata*'s Elements

The court concludes that all of *res judicata*'s elements are met, with one qualification that will be mentioned.  *Res judicata* is a doctrine that bars claims that were litigated or should have been litigated in a previous action.  *Hill v. Carroll Cty.*, 17 So. 3d 1081, 1084-85 (Miss. 2009).  "To determine the preclusive effect of a state court judgment in a federal action, federal courts must apply the law of the state from which the judgment emerged."  *Black v. N. Panola School Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (quotation marks omitted).  Accordingly, Mississippi law applies to this case.  Under Mississippi law, "it is frequently recognized that the rule of *res judicata* applies when an order or decision of an administrative agency in the exercise of a quasi-judicial or adjudicatory power has been affirmed by a reviewing court."  *City of Jackson v. Holliday*, 149 So. 2d 525, 527-28 (Miss. 1963) (quotation marks omitted).

"For the bar of *res judicata* to apply in Mississippi there are four identities which must be present: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made."  *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 232 (Miss. 2005).  "In addition to the four identities, a fifth requirement is that the prior judgment must be a final judgment that was adjudicated on the merits."  *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1090 (Miss. 2009).  The court will address each requirement.

---

[2]Although MEC frames this argument as a contention that one of *res judicata*'s elements is not satisfied, the court will explain below that it is more accurately characterized as a due process argument.

No. 18-60083

A.    **Identities of the Subject Matter and the Cause of Action**

The first two identities, subject matter and cause of action, are related. Both are met here. The Supreme Court of Mississippi has "defined subject matter as the 'substance' of the lawsuit." *Hill*, 17 So. 3d at 1085. To illustrate, in *Hill*, the court explained that the "subject matter presented in both the federal and the state suits is the same. In each suit, the subject matter consists of the method of restraint used by Carroll County deputies and the manner in which the deputies transported [the decedent] to [jail]." *Id.*

The cause of action identity is similar. "The identity referred to in this portion of the analysis is the identity of the *underlying facts and circumstances* upon which a claim has been brought." *EMC*, 17 So. 3d at 1090 (emphasis in original) (quotation marks omitted). The Mississippi Supreme Court has "further noted that in cases involving claim preclusion, this distinction [between a different claim as opposed to an additional legal theory] is indeed very important and requires that the parties, as well as the courts, distinguish between what body of fact constitutes a claim and what legal theories attach to that body of fact." *Hill*, 17 So. 3d at 1085 (alteration in original) (quotation marks omitted). Indeed, in interpreting Mississippi law, this court has recognized that "in the res judicata context, a cause of action is a group of operative facts that entitles a petitioner to seek remedy in court." *Black*, 461 F.3d at 589.

To illustrate how the subject matter and cause of action identities work in tandem, this court in *Black* explained:

> [T]he subject matter of both the first and second suit can be described as the sexual assault of Jane Doe. The causes of action are the underlying facts giving rise to Jane Doe's claims: her sexual assault at the hands of two boys in her unsupervised classroom. Identical factual allegations of sexual assault support the legal theories in both lawsuits. Accordingly, there are identities of subject matter and cause of action.

5

*Id.* 591-92.    "Thus, identity of subject matter turns on a general characterization of the suit.  It is the substance of the action.  By contrast, identity of cause of action is defined by the underlying group of facts giving rise to a claim."  *Id.* at 591.

A complication from the usual analysis of these identities is that the prior litigation relevant to this case was in the context of an appeal from a local governing board's decision to a Mississippi Circuit Court.  *See* Miss. Code Ann. § 11-51-75 (2012).  The issues that can be raised and the relief that can be granted in such an appeal are limited.  On an appeal from a county or municipal governing board, the Circuit Court will consider only whether the board's decision "(1) was beyond its scope or power; (2) violated the constitutional or statutory rights of the aggrieved party; (3) was not supported by substantial evidence; or (4) was arbitrary or capricious."  *McAdams v. Perkins,* 204 So.3d 1257, 1261 (Miss. 2016).  The Circuit Court can either uphold the decision or reverse and "render such judgment as the board or municipal authorities ought to have rendered."  § 11-51-75 (2012).

A limitation on litigation invokes the issue that the *res judicata* bar applies only to those "grounds for, or defenses to recovery that were *available* to the parties in the first action."  *Chandler-Sampson,* 891 So. 2d at 232 (quoting *Alexander v. Elzie*, 621 So.2d 909, 910 (Miss. 1992)) (emphasis added).  As we already pointed out, the "grounds for recovery" asserted now were all available in the earlier appeal.  Indeed, the current constitutional claims were asserted in the appeal.  The Circuit Court, performing its appellate role, rejected that any violation of the Constitution occurred.

Nonetheless, even though the legal arguments being made now were considered and rejected by the state court, the remedy of money damages was not available as part of the appeal from the Board's decision.    Such a

6

restriction, if it were not ameliorated, raises a problem discussed by the Mississippi Supreme Court in *Chandler-Sampson.* The court quoted one of the exceptions to *res judicata* from the Restatement of Judgments, though not one relevant to us. *Chandler-Sampson,* 891 So. 2d at 234 (a prior judgment will not bar later litigation when "the defendant consented to the splitting of the plaintiff's cause of action" (quoting Restatement (First) of Judgments § 62(c) (1942))). A different exception applies here: "where the procedure adopted by the plaintiff precluded his recovery for the entire claim and this procedure was essential to preserving his rights." Restatement (First) of Judgments § 62(a).

At most, proving as part of the appeal in state court that a constitutional violation occurred would have led the Circuit Court to set aside the Board decision and enter the correct decision. The opposite occurred, namely, MEC asserted and lost the argument that its constitutional rights had been violated by the Board of Supervisors. Were the Mississippi Supreme Court to apply the Restatement exception that arises when the entire claim could not be brought in the first suit, it could be it would hold that the identities of subject matter and cause of action were not identical *in the appeal* and in the current suit.

We have an initial and then final response to that possibility. First, the prior rejection by the state court of the identical legal argument being made now invokes the doctrine of collateral estoppel in circumstances similar to those in *Schuster v. Martin,* 861 F.2d 1369 (5th Cir. 1988). There, the plaintiff claimed a violation of his due process rights and sought an injunction in a Mississippi state court. *Id.* at 1370-71. The state court held there was no due process violation. *Id.* The plaintiff then brought suit in federal court under § 1983 for damages, asserting the same due process arguments. *Id.* at 1371. The plaintiff argued "that because the *relief* sought is different, the *issue* litigated is necessarily different." *Id.* at 1372 (emphasis in original). This court disagreed: "although the damage issues were not, and probably could not be,

litigated in the prior case, they cannot now serve as an independent basis for a new lawsuit if the underlying theory of recovery, *i.e.*, that due process was violated, is precluded from relitigation." *Id.* There is more to the doctrine of collateral estoppel than we need to discuss here because of our next point.

As we analyze in greater detail in the final section of this opinion, the Mississippi Supreme Court has held that other claims, perhaps in the nature if not form of a separate suit, can be presented and consolidated in the Circuit Court for resolution with the appeal from a board of supervisors. *See Falco Lime, Inc., v. Mayor & Aldermen of City of Vicksburg*, 836 So. 2d 711, 717-20 (Miss. 2002). Not only could other claims be brought, they were brought by MEC. In its amended bill of exceptions, it claimed that a "loss of property and liberty interest[s]" is the central issue in this case. More specifically, it said it "is making a 'substantive' due process claim." As for relief, MEC sought specifically the exemption for its business and "any other relief to which it is entitled."

We conclude that MEC could and did join its additional claims to the more limited claims properly made in an appeal from the Board. The subject-matter and cause-of-action identities are met. MEC's case in state court and this case have the same subject matter, namely, the passage of the county ordinance and MEC's attempts to receive an exemption from it. Additionally, the underlying facts and circumstances upon which both suits were brought are the same: the county passed an ordinance restricting nightclub operating hours, MEC went before the Board of Supervisors attempting to receive an exemption, and the county denied the exemption. Accordingly, the subject matter and cause of action identities are met.

B.    **Identities of the Parties and the Quality or Character of the Defendants**

Both of these identities are met because MEC has conceded them.  In explaining the identity of the parties, the Mississippi Supreme Court has held that "[a]lthough identity of the parties is a necessary element of res judicata, this Court has repeatedly held that strict identity of parties is not necessary for either res judicata or collateral estoppel to apply, if it can be shown that a nonparty stands in privity with the party in the prior action."  *EMC*, 17 So. 3d at 1090-91 (quotation marks omitted).  In discussing the final identity, the court explained that "[a]lthough this Court has not explicitly defined the identity of the quality or character of a person against whom the claim is made, examples of this identity and its application exist."  *Hill*, 17 So. 3d at 1086.  One such example is that the Mississippi Supreme Court "found the fourth identity to be met, because the named defendant was the same as in the previous action." *Id.* at 1087.

In any event, MEC conceded in both the district court and in this court that these two identities are met.  "A party's concession of an issue means the issue is waived and may not be revived."  *Black*, 461 F.3d at 592 (quotation marks omitted).  In short, all four identities are met.

C.    **Final Judgment on the Merits**

The Mississippi Circuit Court's judgment represents a final judgment on the merits, satisfying *res judicata*'s fifth requirement.  "In addition to the four identities, a fifth requirement is that the prior judgment must be a final judgment that was adjudicated on the merits."  *EMC*, 17 So. 3d at 1090.  "A final judgment on the merits is [a] judgment based on the evidence rather than on technical or procedural grounds."  *Estate of White v. White,* 152 So. 3d 314, 317 (Miss. 2014) (quotation marks omitted) (alteration in original).  "While our prior cases have considered whether a judgment

constituted a 'final judgment on the merits' on a case-by-case-basis, a judgment generally will not be considered a 'final judgment on the merits' when the first case was dismissed for a procedural defect or some other technical ground that prevented the court from reaching the merits of the case." *Id.*

Here, the Mississippi Circuit Court entered a final judgment on the merits. It did not dismiss the case on a technical or procedural ground. Rather, it reviewed the evidence and ruled on the merits, explaining, in its view, that because no taking occurred, no deprivation of due process occurred. It further ruled that the Board's decision to deny the restaurant exemption was supported by substantial evidence and was not arbitrary or capricious. The Circuit Court then dismissed the case with prejudice. Thus, it entered a final judgment on the merits.

## II.    Full and Fair Opportunity to Litigate

The court concludes that MEC received a full and fair opportunity to litigate in the Circuit Court. Accordingly, the state court's judgment retains its preclusive effect. MEC contends that the Circuit Court's appellate process of reviewing the Board's decision did not allow for a full and fair opportunity to litigate because it lacked "the hallmarks of actual litigation" including discovery, "deposition transcripts with cross-examination allowed of adverse parties" and "documents produced subject to subpoena power of the court." Although MEC might not have enjoyed these aspects of litigation in the Circuit Court, MEC was not denied a full and fair opportunity to litigate.

The Supreme Court has long held that 28 U.S.C. § 1738 "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466, 102 S. Ct. 1883, 1889 (1982). A narrow exception exists, however, if a party received no "full and fair opportunity to litigate" his claims in the state court.

No. 18-60083

*Id.* at 481 n.22, 102 S. Ct. at 1897 n.22. But showing that a party enjoyed a full and fair opportunity to litigate requires only that "state proceedings . . . do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Id.* at 481, 102 S. Ct. at 1897. Satisfying these minimum procedural requirements is enough for state court judgments to retain their preclusive effect in federal courts.

This court has had little occasion to elaborate on this subject, but "the ordinary conclusion will be that due process was satisfied and that preclusion cannot be defeated by dissatisfaction with the quality of the state proceedings." 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4471.2 (2d ed.) (Sept. 2018 update). Importantly, that one "failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy." *Kremer*, 456 U.S. at 485, 102 S. Ct. at 1899; *see Carter v. City of Emporia, Kan.*, 815 F.2d 617, 621 (10th Cir. 1987) ("If plaintiffs do not avail themselves of the full procedures provided by state law, this does not constitute a sign of their inadequacy.") (quotation marks omitted); *Krison v. Nehls*, 767 F.2d 344, 348 (7th Cir. 1985) ("The fact that the prior state action was in the nature of certiorari to review an administrative proceeding does not deprive the earlier action of its preclusive effect if the court had the authority to review substantive legal claims beyond administrative review.") (quotation marks omitted); Wright & Miller § 4471.2 ("[F]ailure to take advantage of available state procedures does not establish a denial of due process."); *see also Parratt v. Taylor*, 451 U.S. 527, 544, 101 S. Ct. 1908, 1917 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S. Ct. 662, 664 (1986) ("Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process.").

11

No. 18-60083

Here, the Mississippi appellate procedure that MEC followed comports with due process. The Mississippi statute stated that "[a]ny person aggrieved by a judgment or decision of the board of supervisors . . . may appeal" to an appropriate Mississippi Circuit Court. Miss. Code Ann. § 11-51-75. To do so, a party prior to the 2018 amendments was to file a bill of exceptions that "may embody the facts, judgment and decision," and the Circuit Court "shall . . . hear and determine the . . . case as presented by the bill of exceptions as an appellate court." *Id.*[3] As is typical in appellate courts, no discovery or testimony outside the bill of exceptions is permitted. *See Falco Lime,* 836 So. 2d at 717.

Sometimes, a party would file both a bill of exceptions, *i.e.,* an appeal, and a separate "ordinary complaint" in the Circuit Court regarding the same underlying facts. *Id.* at 717, 720. In such instances, the Mississippi Supreme Court has explained that "[w]here the circuit court finds before it a § 11-51-75 appeal that arises out of a common nucleus of operative fact with claims that would ordinarily be resolved by a trial de novo, the better procedure is to function first in its appellate capacity and hear the § 11-51-75 appeal based on the bill of exceptions, and then proceed to the other claims (and the evidence related to them) only if the resolution of the appeal leaves them unresolved." *Id.* at 720. In other words, after a party completes the § 11-51-75 appellate process, he may then present additional evidence on other claims if they remain unresolved. *Id.*

In this case, MEC filed a bill of exceptions appealing the Board's decision. The bill of exceptions asserted that the Board's restaurant exemption denial was not based on substantial evidence and was arbitrary and capricious. It

---

[3] Among the substantial revisions by the 2018 Mississippi Legislature is the requirement that an appeal be initiated by the filing of a notice of appeal and not by the filing of a bill of exceptions, after which the local clerk in due course must assemble a record. *See* 2018 Miss. Laws Ch. 448, § 1 (effective July 1, 2018). Such changes have no effect on this case.

No. 18-60083

further contended that the Board's decision amounted to an unlawful taking and also violated MEC's substantive due process rights.

MEC acknowledged in its appellate briefing that *Falco Lime* would have permitted it to file both its appellate bill of exceptions to allege the Board decision violated its constitutional rights and also a separate 42 U.S.C. § 1983 action seeking damages and other relief for the claimed constitutional violations. ("[T]he *Falco Lime* holding would have permitted MEC to file both actions in state court simultaneously."). Had MEC done so, it could have first argued in its § 11-51-75 appeal that the Board's decision was arbitrary and capricious or lacked substantial evidence, as MEC so argued, and then it could have presented new evidence regarding its constitutional claims in the separate § 1983 action. *Falco Lime*, 836 So. 2d at 720. In short, that one "failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy." *Kremer*, 456 U.S. at 485, 102 S. Ct. at 1899. For that reason, the Mississippi appellate procedure did not violate due process, and the Circuit Court's judgment retains its preclusive effect.[4]

Finally, despite admitting that it could have filed both the appeal and the § 1983 claim simultaneously, MEC nonetheless argues that following *Falco Lime*'s procedure would have "effectively placed conditions on the vindication of MEC's federal right to file a § 1983 claim." For this proposition, MEC cites *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302 (1988). That case is inapposite.

---

[4] MEC also argues that *res judicata* should not apply because the Circuit Court did not rule on the constitutionality of the county ordinance "because of its erroneous ruling that [MEC] did not challenge the constitutionality of the ordinance or the Board's legal right to enact such an ordinance." (quotation marks omitted). In other words, MEC alleges that the Circuit Court misunderstood its argument and ruled erroneously. That a state court may have ruled incorrectly, however, does not alter the state judgment's preclusive effect. *See Matter of Brady, Tex., Mun. Gas Corp.*, 936 F.2d 212, 219 (5th Cir. 1991); *Davis v. Chase Home Finance, L.L.C.*, 597 F. App'x 249, 253 (5th Cir. 2015) (per curiam) ("[E]ven if the chancery court's determination . . . was erroneous, its preclusive effect on this court remains binding.").

No. 18-60083

In *Felder*, the Wisconsin Supreme Court held that the state's notice-of-claim statute applied to § 1983 actions brought in state court. *Id.* at 134, 108 S. Ct. at 2304-05. That statute provided that before suing a state entity or officer in state court, a plaintiff "must notify the governmental defendant of the circumstances giving rise to the claim, the amount of the claim, and his or her intent to hold the named defendant liable." *Id.* at 134, 108 S. Ct. at 2304. The statute further required that, "in order to afford the defendant an opportunity to consider the requested relief, the claimant must refrain from filing suit for 120 days after providing such notice." *Id.*

The Supreme Court concluded that the notice-of-claim statute was preempted when § 1983 claims were brought in Wisconsin courts. *Id.* at 138, 108 S. Ct. at 2307. The Court reasoned that "[i]n enacting § 1983, Congress entitled those deprived of their civil rights to recover full compensation from the governmental officials responsible for those deprivations. A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability, and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives" of § 1983. *Id.* at 153, 108 S. Ct. at 2314.

The *Falco Lime* procedure is entirely distinguishable. It is not a rule designed to minimize governmental liability; it is rather meant to ensure that typical rules of appellate procedure such as confining evidence to the record on appeal are followed. *Falco Lime*, 836 So. 2d at 720. Further, it does not require a plaintiff to request relief from a state official in the first instance—at least not regarding § 1983 claims. Rather, *Falco Lime* explains that, after hearing an § 11-51-75 appeal, a Mississippi court should proceed to hear new claims, including, as MEC admits, § 1983 claims. Accordingly, § 11- 51-75 does not

14

place preempted restrictions on § 1983.  In short, *res judicata* precludes MEC's suit.[5]

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

---

[5] In addition to its *res judicata* arguments, MEC contends that "genuine issues of material fact remain as to whether plaintiff's constitutional rights were violated by the enactment of the ordinance and the denial of the restaurant exemption."  Yet, nowhere in MEC's opening or reply brief does it show that a *dispute* of material fact exists. *See* Fed. R. Civ. P. 56(a).  In any event, MEC's response to the Defendants' motion for summary judgment never cites any depositions, affidavits, or other supporting materials to show that any fact "is genuinely disputed."  Fed. R. Civ. P. 56(c)(1).  Thus, MEC has not shown that any genuine dispute of material fact exists.