# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00966-SCT

*CAROLYN McADAMS*

*v.*

*SHERIEL F. PERKINS*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/11/2015 |
| TRIAL JUDGE: | HON. MARGARET CAREY-McCRAY |
| TRIAL COURT ATTORNEYS: | WILLIE JAMES PERKINS, SR. |
| | H. DONALD BROCK, JR. |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARC A. BIGGERS |
| ATTORNEY FOR APPELLEE: | WILLIE J. PERKINS, SR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 12/08/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Carolyn McAdams, mayor of the City of Greenwood, appeals a decision of the Leflore County Circuit Court. The circuit court held that the Greenwood City Council's decision to hire legal counsel to represent the city's interest in an election contest exceeded its power and violated the Mississippi Constitution. Finding error in the trial judge's interpretation of Mississippi Code Sections 25-1-47 and 21-17-5, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

¶2.     The City of Greenwood held a general election in which two candidates sought the office of mayor: Carolyn McAdams, the incumbent, and Sheriel Perkins. McAdams won the election, receiving 52.05 percent of the votes cast. Perkins filed an election contest and named McAdams, in her individual capacity, as the sole defendant.[1] McAdams hired Butler Snow, LLP, to represent her in the election contest.

¶3.     The Greenwood city attorney requested an attorney general opinion,[2] asking if the municipality could "(1) reimburse the Mayor for legal fees and costs she has incurred to defend the state-action allegations in federal court; and (2) retain [counsel] . . . to represent the City's interest in upholding the validity of the municipal election and the actions of its elections officials, going forward." The Attorney General's Office opined that the council could employ a law firm to defend claims made against municipal officers acting in their official capacity under Mississippi Code Section 25-1-47. Further, the attorney general opined the council could hire a law firm under Mississippi Code Section 21-17-5 after it determined it had an interest in the election contest. Lastly, the attorney general opined the council could not reimburse the mayor for her personal attorney's fees.

¶4.     After receiving the attorney general opinion, the Council passed a resolution employing Butler Snow, LLP—the same firm employed by McAdams—"to represent the City's interest in upholding the validity of the municipal election and actions of its election officials." Though not a party to the election contest, the Greenwood City Council

---

[1]In **Fisher v. Crowe**, we held that "[t]he only proper defendant in an election contest is the successful party in the election." **Fisher v. Crowe**, 303 So. 2d 474, 475 (Miss. 1974).

[2]Miss. Att'y Gen. Op. No. 2014-00475, 2014 WL 9910539 (Dec. 1, 2014).

determined it had an interest in the election contest and that the claims asserted in Perkins's election contest "involve[d] the actions of various city officials carrying out their official duties as members of the Elections Commission, poll workers, as well as the Municipal Clerk and his employees[.]" Perkins appealed to the circuit court by filing a Bill of Exceptions challenging the council's resolution. In her capacity as mayor, McAdams certified the Bill of Exceptions, as procedurally required by Mississippi Code Section 11-51-75. *See* Miss. Code Ann. § 11-51-75 (Rev. 2012).

¶5.     The circuit court reversed the council's decision to hire Butler Snow, finding the resolution to be beyond its scope or powers and in violation of the Mississippi Constitution. The circuit court found (1) Section 25-1-47 prohibited the council from authorizing the employment of counsel to defend the election contest; (2) the council's hiring of Butler Snow was an expenditure of public funds for a private purpose in violation of the Mississippi Constitution; and (3) that the City of Greenwood had no legitimate legal interest in the election contest, nor any liability resulting therefrom.

¶6.     Following the circuit court's decision, the council tabled a "Resolution to Approve an Appeal of the Order and Opinion." Three days later, McAdams, in her official capacity, filed a Notice of Appeal, and she now presents the following issues:[3]

> I.      Whether Mississippi Code Section 25-1-47 authorized the Greenwood City Council to employ counsel for the defense of claims challenging the conduct of city officials carrying out their official duties during the June 4, 2013, mayoral election.

---

[3]This is the only suit at issue in this appeal; Perkins's underlying election contest is not before us.

II.     Whether Mississippi Code Section 21-17-5, when read *in pari materia* with Mississippi Code Section 25-1-47 and as interpreted by the Mississippi Attorney General, authorized the Greenwood City Council to employ counsel to defend the city's interests in the election contest challenging the conduct of city officials carrying out their official duties during the June 4, 2013, mayoral election.

III.    Whether the circuit court committed reversible error when it substituted its judgment for that of the Greenwood City Council by holding as a matter of law that the city "has no legitimate interest" in the election contest challenging the June 4, 2013, Greenwood mayoral election when the city resolved that it did have an interest.

For clarity, we have combined our discussion of McAdams's first two issues. And because we find those issues dispositive, we decline to address the third issue. Perkins also has filed a Motion to Dismiss this appeal, which we address last.

## STANDARD OF REVIEW

¶7.     The bill of exceptions serves as the record on the appeal of a decision by a municipal authority. *Stewart v. City of Pascagoula*, 206 So. 2d 325, 328 (Miss. 1968). Questions of law are reviewed by this Court de novo. *Nelson v. City of Horn Lake ex. rel. Bd. of Aldermen*, 968 So. 2d 938, 942 (Miss. 2007). Statutory interpretation is a question of law. *Id*. (citing *Weiner v. Meredith*, 943 So. 2d 692, 694 (Miss. 2006)). But decisions by the governing authorities of a municipality are subject to limited review. *McWaters v. City of Biloxi*, 591 So. 2d 824, 827 (Miss. 1991). Our courts will overturn a decision by municipal authorities only if the decision (1) was beyond its scope or power; (2) violated the constitutional or statutory rights of the aggrieved party; (3) was not supported by substantial evidence; or (4) was arbitrary or capricious. *Baymeadows, LLC v. City of Ridgeland*, 131 So. 3d 1156, 1169 (Miss. 2014).

4

# ANALYSIS

¶8.     As an initial matter, Perkins argues that McAdams, by certifying the Bill of Exceptions, is estopped from raising her issues on appeal. Perkins alleges that McAdams certified (1) the council had voted to pay McAdams's attorney's fees; (2) that the council's resolution is in violation of state law; and (3) that any reliance on the requested attorney general opinion is misplaced. McAdams disagrees, arguing her signature did not constitute an agreement that the council's actions were unlawful. We agree with McAdams.

¶9.     Mississippi Code Section 11-51-75 states:

> Any person aggrieved by a judgment or decision of the . . . municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the . . . municipal authorities rendered such judgment or decision, *and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president . . . of the municipal authorities.*

Miss. Code Ann. § 11-51-75 (Rev. 2012) (emphasis added). We previously have analyzed the duty of a mayor in certifying a bill of exceptions:

> The general rule with respect to bills of exceptions when presented to the proper official for signature appears to be that such officer or official cannot arbitrarily refuse to sign and return the bill of exceptions merely because he deems the same to be incorrect, but that it is his duty to point out wherein he deems the same to be incorrect, and to note his corrections thereon, and to sign the same as correct.
> . . .
>
> If he deemed incorrect the bill of exceptions presented to him, he was under an implied duty to point out wherein he deemed the same incorrect so that the aggrieved parties might have an opportunity to amend the same, and then to sign the same as corrected.

***Wilkinson Cty. Bd. of Supervisors v. Quality Farms, Inc.***, 767 So. 2d 1007, 1012 (Miss. 2000) (quoting ***Reed v. Adams***, 111 So. 2d 222, 224–25 (Miss. 1959)).

¶10.    But our ***Reed*** and ***Wilkinson County*** decisions do not hold that, by certifying a bill of exceptions, a party confesses that the opposing party's *legal arguments* are correct. McAdams argues correctly that, while "the bill of exceptions reflects the actions taken and the decision made, such signature does not constitute an agreement with Perkins that the resolution was prohibited by law or was otherwise improper." Therefore, McAdams is not estopped from raising her issues on appeal, and we turn now to the merits.

¶11.    McAdams first asks this Court to determine whether Mississippi Code Section 25-1-47 permitted the council to hire Butler Snow. Section 25-1-47 reads, in pertinent part, as follows:

> Any municipality of the State of Mississippi is hereby authorized and empowered, within the discretion of its governing authorities, to investigate and provide legal counsel *for the defense of any claim, demand, or action,* whether civil or criminal, made or brought against any state, county, school district, or municipal officer, agent, servant, employee, or appointee as a result of his actions while acting in the capacity of such officer, agent, servant, employee, or appointee; and such municipality is hereby authorized to pay for all costs and expenses incident to such investigation and defense.

Miss. Code Ann. § 25-1-47(1) (Rev. 2010) (emphasis added).

¶12.    The trial judge found that Section 25-1-47 "clearly prohibit[ed] the Council from authorizing the employment of legal counsel to defend the election contest" because the election contest was only an action between private litigants (i.e., no city officials were named as defendants) and no claims were asserted against McAdams in her official capacity. Perkins agrees with the trial court, arguing further that her election contest did not seek a

demand against city officials. In essence, Perkins asks this Court to interpret Section 25-1-47 narrowly and hold that a "claim, demand, or action [is] . . . made or brought" only where city officials actually are named as defendants in the litigation. *See id.*

¶13.     But McAdams argues that the council's resolution shows that Perkins, in her election-contest complaint, asserted claims against municipal officers which arose out of the municipal officers' official actions. Though the election-contest complaint is not part of the record, the council's resolution attached to the Bill of Exceptions states "[Perkins] contends that various violations of the Mississippi Election Code occurred, [involving] the handling of affidavit and absentee ballots, ballot boxes and certain polling procedures." Further, the resolution states that "although the Mayor is named as the only defendant in the case, the claims in the present State Court Complaint also involve the actions of various City officials carrying out their official duties as members of the Elections Commission, poll workers, as well as the Municipal Clerk and his employees."

¶14.     We find that the plain language of Section 25-1-47 permits the council to hire legal representation even if no city officials are named as defendants in a lawsuit. We have found no caselaw directly on point, but the attorney general has opined that "the use of the word 'claim' in the statute is intended to express a broader range of authority to negotiate and settle than use of the word 'litigation' would have entailed." *Rodney E. Shands*, Miss. Att'y Gen. Op., 1990 WL 548098 (Oct. 22, 1990). The attorney general further opined that it did "not think the Legislature intended to require a lawsuit be filed, with all the expenses

7

attendant to litigation, before a public body could avail itself of [Section] 25-1-47 of the Mississippi Code of 1972." *Id.*

¶15.     Though attorney general opinions are not binding, they may be considered by this Court and we find the attorney general's opinion is persuasive here. *See City of Durant v. Laws Constr. Co.*, 721 So. 2d 598, 604 (Miss.1998). To require that formal litigation be filed against the city before the council may retain legal representation pursuant to Section 25-1-47 places a significant limitation on the council's authority; such a limitation does not conform to the plain language of Section 25-1-47. Had the Legislature intended otherwise, it would have limited the language of the statute to "demand or action . . . brought." *See* Miss. Code Ann. § 25-1-47(1). While it is true that a municipal officer is not a proper party to an election contest, we find that Section 25-1-47 permits the governing authorities of a municipality to employ legal representation to defend "claims" challenging the official actions of municipal officers, regardless of whether municipal officers are named defendants.

¶16.     We also find that Mississippi Code Section 21-17-5 likewise permitted the council's resolution. Section 21-17-5 states, in pertinent part:

> *The governing authorities of every municipality of this state shall have the care, management and control of the municipal affairs and its property and finances*. In addition to those powers granted by specific provisions of general law, the governing authorities of municipalities shall have the power to adopt any orders, resolutions or ordinances with respect to such municipal affairs, property and finances which are not inconsistent with the Mississippi Constitution of 1890, the Mississippi Code of 1972, or any other statute or law of the State of Mississippi, and shall likewise have the power to alter, modify and repeal such orders, resolutions or ordinances.

8

Miss. Code Ann. § 21-17-5(1) (Rev. 2015) (emphasis added). Under Section 21-17-5, known as the "Home Rule,"[4] the governing authorities may adopt resolutions pertaining to municipal finances as long as the resolutions do not violate Mississippi law. *See id*. As with Section 25-1-47, there is little caselaw on the Home Rule's application. But there are numerous attorney general opinions for this Court to consider. In 1991, the attorney general opined that Mississippi Code Section 19-3-47[5] permitted a board of supervisors to employ counsel to represent the county's interest in an election contest. *James W. Burgoon, Jr.*, Miss. Att'y Gen. Op., 1991 WL 578191 (Nov. 12, 1991); *see also* Miss. Att'y Gen. Op. 2008-00695, 2008 WL 5636336 (Jan. 30, 2008) (opining the county may approve the payment of legal fees to uphold an election so as to avoid a special election). Two years later, the attorney general further opined that municipal authorities have the discretionary authority, under Section 21-17-5, to employ legal counsel to represent a municipality's interest in an election

---

[4]*See **Mayor and Bd. of Aldermen, City of Ocean Springs v. Homebuilders Ass'n of Miss., Inc.**, 932 So. 2d 44, 50 (Miss. 2006).

[5] *The board of supervisors shall have the power, in its discretion, to employ counsel in all civil cases in which the county is interested*, including eminent domain proceedings, the examination and certification of title to property the county is acquiring and in criminal cases against a county officer for malfeasance or dereliction of duty in office, when by the criminal conduct of the officer the county may be liable to be affected pecuniarily, with the counsel to conduct the proceeding instead of the district attorney, or in conjunction with him, and to pay the counsel out of the county treasury or the road fund that may be involved reasonable compensation, or if counsel so employed is retained on an annual basis as provided in this subsection, reasonable additional compensation for his services.

Miss. Code Ann. § 19-3-47(b) (Rev. 2012) (emphasis added).

9

contest. Miss. Att'y Gen. Op. No. 93-0499, 1993 WL 294292 (July 14, 1993); *see also* Miss.

Att'y Gen. Op. No. 97-0469, 1997 WL 549288 (Aug. 8, 1997) (opining the same). We also

note Mississippi Code Section 21-15-25, which states

> *[t]he governing authorities* may annually appoint an attorney-at-law for the municipality, prescribe his duties and fix his compensation, and/or they *may employ counsel to represent the interest of the municipality, should the occasion require*. For services and duties which the regular city attorney is not required to perform as a result of his employment as such, and which are not covered by the regular compensation paid him, such municipal attorney may be employed and compensated additionally.

Miss. Code Ann. § 21-15-25 (Rev. 2015) (emphasis added). Based on the foregoing, we find

that Section 21-17-5  also permitted the council's resolution to hire Butler Snow to represent

its interest in the election contest.

¶17.    In reaching this conclusion, we acknowledge the trial judge's concern that

McAdams's and the attorney general's interpretation of these statutes effectively would allow

a municipality to pick and choose which cases the city will defend. In her order, the trial

judge noted

> [a]nother troubling aspect of the Attorney General's opinion of § 25-17-5 is that it effectively allows municipalities to subjectively determine which election contests they will defend even when cases present identical claims. The City Council, on a case by case basis, has the discretion to determine: first, whether municipal interests are involved; then, whether the city will expend public funds to defend. For example, if the results of the June 2013 election were the opposite and an otherwise identical election contest was filed, the Council could simply ignore it or refuse to defend. Winning candidates supported by a majority of the Council could routinely gain publicly paid counsel to defend or at least buttress their case. On the other hand, such support could be withheld from winners who are not the majority's choice. Thus, the City Council's discretion constitutes misuse of municipal authority regarding the expenditure of public funds for private purposes in clear violation of the Mississippi Constitution.

But simply put, while valid, these concerns cannot override the statutory discretion given to the governing authorities of a municipality.

¶18.    Moreover, in *Madison County v. Hopkins*, we also examined the broad discretion Section 25-1-47 provides. *Madison Cty. v. Hopkins*, 857 So. 2d 43 (Miss. 2003). Though that case dealt with a county rather than a municipality, we considered numerous attorney general opinions which opined that Section 25-1-47 "permits, *but does not require*, a county to provide legal counsel for the defense of any claim against an officer or employee of a county while acting in his official capacity . . . ." *Id*. at 50 (emphasis added). We also noted that holding legal counsel *"must* be provided . . . *completely disregards the statutorily granted discretion provided* to the counties." *Id*. at 51 (emphasis added). We concluded by noting that it is the county officials who "are charged with control of the county's purse strings." *Id*.

¶19.    We acknowledge Perkins's argument and the trial court's finding that the council's resolution authorized a donation of public funds to McAdams and therefore violated the Mississippi Constitution. Perkins argues that "[t]he passing of the resolution under the pretext of protecting the interest of the city in the private litigation is noting [sic] short of a back door approach . . . to pay . . . McAdams' [s] attorney's fees." The trial court agreed, finding that "what the City of Greenwood has resolved to do is financially assist Mayor McAdams in marshaling evidence and retaining legal services to defend" against Perkins's claim. The trial court further reasoned that, because Butler Snow is providing "overlapping" legal services to McAdams and the council, the resolution was unlawful. We disagree.

11

¶20.    The constitutional provision at issue states:

> No law granting a donation or gratuity in favor of any person or object shall be enacted except by the concurrence of two-thirds of the members elect of each branch of the Legislature, nor by any vote for a sectarian purpose or use.

Miss. Const. art 4, § 66.

¶21.    "Donations by a municipality are unlawful" and violate the Mississippi Constitution. *Nichols v. Patterson*, 678 So. 2d 673, 682 (Miss. 1996). Indeed, a "municipal board cannot lawfully give away public money." *Trowbridge v. Schmidt*, 34 So. 84, 84 (Miss. 1903). A donation or gratuity is characterized by an absence of consideration, i.e., "the transfer of money or other things of value from the owner to another without any consideration." *Craig v. Mercy Hosp.-St. Mem'l*, 45 So. 2d 809, 814 (Miss. 1950). And though the parties have supplied us with no caselaw on point, we agree with the attorney general that a municipality may not pay for the attorney's fees *incurred by a candidate* in an election contest; the payment of such fees is a donation of public funds to a private individual. *See, e.g.,* Miss. Att'y Gen. Op. No. 2014-00475; Miss. Att'y Gen. Op. No. 97-0469; *Everett T. Sanders*, Miss. Att'y Gen. Op., 1991 WL 578171 (Dec. 18, 1991) (emphasis added).

¶22.    Though Perkins asserts numerous times that the City authorized payment of McAdams's attorney fees, the resolution passed by the Council shows otherwise. The resolution states that "the City of Greenwood is hereby authorized to retain the services of Butler Snow, LLP for representation *of the City's interests in reference to the election contest*." Nowhere in the resolution does it state that the council is paying for McAdams's fees as well. Though the Greenwood city attorney asked if the council could pay McAdams's

12

attorney's fees in his letter to the attorney general, the council's ultimate decision never authorized the payment of such fees.

¶23. Further, the fact that Butler Snow's services may provide "overlapping support" to both McAdams and the council does not transform the council's resolution into an unlawful donation. Though it is possible that the council's hiring of the same law firm may decrease the costs McAdams must pay to her attorneys, it also may decrease the costs the city will incur. So in sum, we find that Sections 25-1-47 and 21-17-5 permitted the council to pass the resolution at issue here, and we therefore reverse the judgment of the Leflore County Circuit Court.

¶24. Finally, we address Perkins's motion to dismiss this appeal. Perkins argues that McAdams "lacks authority to pursue this appeal . . . on behalf of the City of Greenwood and the Greenwood City Council where the Greenwood City Council has authorized no such appeal."[6] But Perkins cites no authority to support her assertion that McAdams—the mayor and executive officer of the municipality—has no authority to pursue an appeal on behalf of the city without specific authorization from the council. And Section 21-8-15 states that "[t]he executive power of the municipality shall be exercised by the mayor, and the mayor shall have the *superintending control of all* the officers and *affairs of the municipality . . . .*" Miss. Code Ann. § 21-8-15 (Rev. 2015) (emphasis added). In short, we find nothing in the

_____

[6]While it is clear that the crux of Perkins's dismissal argument is that McAdams lacks authority to pursue this appeal on the City's behalf, she also states that McAdams "is *without standing* to maintain an appeal on behalf of the City . . . ." (emphasis added). But to the extent that McAdams also is making a standing argument, we are not persuaded. McAdams is a named appellee to the Bill of Exceptions filed by Perkins, and she therefore has standing to pursue this appeal.

statutes governing the mayor-council form of government or the relevant caselaw that prohibits a mayor from pursuing an appeal on behalf of a municipality, absent the council's express prohibition. And there is no evidence in this record that the council voted to prohibit this appeal, or that the council objects to McAdams pursuing it here. As such, we deny Perkins's motion to dismiss.

## CONCLUSION

¶25.    For these reasons, we reverse and render the judgment of the Leflore County Circuit Court.

¶26.    **REVERSED AND RENDERED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., COLEMAN, MAXWELL AND BEAM, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶27.    The Greenwood City Council tabled the resolution to appeal the decision of the Circuit Court of Leflore County.[7] Accordingly, Carolyn McAdams, who filed a notice of appeal in her official capacity as mayor of the City of Greenwood, acted without authority in filing the present appeal absent the approval of the Greenwood City Council. Because I would grant Sheriel Perkins's motion to dismiss, I respectfully dissent.

¶28.    The City of Greenwood, Mississippi, operates under a "mayor-council" form of government. Greenwood, Miss., Ordinances ch. 2, art. I, div. 1, § 2-1 (2010). In a mayor-

---

[7] The proposed resolution stated that "the City Council of the City of Greenwood hereby approves/does not approve appealing the Order and opinion issued in Cause No. 2014-0074(CM)(L) to the Mississippi Supreme Court."

14

council form of municipal government, the mayor exercises "[t]he executive power of the municipality," wielding "superintending control of all the officers and affairs of the municipality" and ensuring that "the laws and ordinances are executed." Miss. Code Ann. § 21-8-15 (Rev. 2015). *See also* Greenwood, Miss., Ordinances ch. 2, art. I, div. 1, § 2-9 (2010) ("The executive and administrative power and duties of the municipality shall be exercised by the mayor"). The law requires the mayor to report annually to the council and the public on the work of the previous year, to make recommendations for action by the council "as he may deem in the public interest," and to supervise all of the departments of the municipal government. Miss. Code Ann. § 21-8-17(1) (Rev. 2015); Miss. Code Ann. § 21-15-7, -9 (Rev. 2015).

¶29. The legislative power of the municipality is exercised by the city council, which authority is "executed by a vote within a legally called meeting." Miss. Code Ann. § 21-8-9 (Rev. 2015); Miss. Code Ann. § 21-8-13(4) (Rev. 2015). The council is responsible for requiring, at the end of each fiscal year, "a full and complete examination of all the books, accounts and vouchers of the municipality to be made by a competent, independent accountant or accountants who shall be appointed by the council." Miss. Code Ann. § 21-8-13(2) (Rev. 2015). The council may, by ordinance, "revise, repeal or change" appropriations and may make additional appropriations. Miss. Code Ann. § 21-8-13(3) (Rev. 2015).

¶30. The mayor retains veto power and must either approve an ordinance or return it to the council accompanied by "a statement setting forth his objections thereto . . . ." Miss. Code

15

Ann. § 21-8-17(2) (Rev. 2015). The council, however, can, "by a vote of two-thirds (2/3) of the members present and voting resolve to override the mayor's veto." *Id.*

¶31.    The Mississippi Attorney General has opined that "[p]rior to taking action, whether it be entering into a contract on behalf of the municipality or filing a lawsuit on behalf of the city, authorization must be given to the Mayor to take such action." As such, "[a]ll approvals and authorizations must be accurately reflected in the official minutes of the municipality, as the governing authorities of a municipality, regardless of the form of government under which the municipality operates, speak only through the official minutes." *Authority of Mayor in Mayor-Council Municipality,* Op. Miss. Att'y Gen. No. 2003-0325 (July 14, 2003). It is true that "an attorney general's opinion is not binding on this Court;" however "it is persuasive . . . ." ***Dupree v. Carroll***, 967 So. 2d 27, 31 (Miss. 2007). Indeed, this Court has recognized the existence of checks and balances, a separation of powers, between the mayor and the city council. *Id.* at 30-31.

¶32.    In the case of ***Gaddy v. Bucklew***, 580 So. 2d 1180, 1180 (Miss. 1990), three members of the City Council of Laurel, Mississippi, appealed a judgment of the Circuit Court of the Second Judicial District of Jones County, "which limited the appointment powers of the Council and held certain actions taken by the Council to be void." A motion to dismiss the appeal was filed. *Id.* at 1182. This Court considered whether the members of the city council could, in their official capacities, prosecute an appeal. *Id.* The Court cited Mississippi Code Section 21-8-11(2), which provided[8] that "the council may not 'adopt any motion, resolution

_____

[8] Section 21-8-11(2) presently provides that "the affirmative vote of a majority of the quorum at any meeting shall be necessary to adopt any motion, resolution or ordinance, or

or ordinance, or pass any measure whatever" except by 'the affirmative vote of a majority of members present at any meeting.'" *Id.* (citing Miss. Code Ann. § 21-8-11(2) (Rev. 1990)). This Court unanimously dismissed the appeal, holding that "[t]he Council did not authorize the appeal in this case by the three appellants in their official capacity," that "the record shows that the Council was affirmatively against any such action," and that "the appellants do not have the authority to pursue this appeal and they are without standing to maintain it on behalf of the Council." *Id.*

¶33. The majority finds that no relevant case law "prohibits a mayor from pursuing an appeal on behalf of a municipality, absent the council's express prohibition." Maj. Op. ¶ 24. I would not limit *Gaddy* to its facts, but rather would find that its essential holding—that the city council's approval is necessary for the filing of an appeal—controls here. Officials, be they members of the city council or the mayor, may not, in their individual capacities, maintain an appeal absent lawful authorization from the city council.[9]

¶34. The majority's language suggests that the mayor may do anything that is not prohibited. While it is true that "the mayor shall have the superintending control of all the officers and affairs of the municipality . . . ," such grant of authority is limited to the authority specifically enumerated in the applicable statutes. *See* Miss. Code Ann. § 21-8-17(1); Miss.

---

to pass any measure whatever . . . ." Miss. Code Ann. § 21-8-11(2) (Rev. 2015).

[9] The majority ascertains that McAdams, as a named appellee to the Bill of Exceptions filed by Perkins, has standing to pursue this appeal. Maj. Op. ¶ 24, n.6. I respectfully disagree. The Bill of Exception listed McAdams in her official capacity as Mayor of the City of Greenwood, Mississippi, not as an individual defendant in the election contest.

Code Ann. § 21-15-7, -9; *see also* Miss. Code Ann. § 21-3-15 (Rev. 2015) (powers and duties of mayor in a mayor-board of aldermen form of municipal government); Miss. Code Ann. § 21-5-7 (Rev. 2015) (powers and duties of mayor in a mayor-commission form of municipal government); Miss. Code Ann. § 21-7-13 (powers and duties of mayor in council form of municipal government).

¶35.    Therefore I would hold that McAdams may not pursue the present appeal and that the appeal should be dismissed forthwith.

**KING, J., JOINS THIS OPINION.**